## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **INTERNATIONAL ASSOCIATION OF** | : | **CIVIL ACTION** |
| **SHEET METAL, AIR, RAIL &** | : | |
| **TRANSPORTATION WORKERS,** | : | |
| **SHEET METAL WORKERS LOCAL** | : | |
| **19** | : | |
| | : | |
| **v.** | : | **NO. 18-2887** |
| | : | |
| **MULTI-TEMP MECHANICAL, INC.** | : | |

### MEMORANDUM

**KEARNEY, J.**                                                                 **March 20, 2019**

A contractor employing union workers under a collective bargaining agreement who is sued by the union for hundreds of thousands of dollars may respond in a variety of ways, including choosing to dispute the claim by showing up at noticed hearings defined by the agreement and in court or not answering and running the substantial risk the court may enter judgment against it. The contractor choosing not to participate under the agreed internal hearing or later court processes but privately and contemporaneously disputing the obligation still needs to appear and defend itself in hearings and timely move to protect its interests. This lesson is particularly important when the union repeatedly reminds the contractor of upcoming hearings and court deadlines and never agrees to delay in moving forward. We today address an even more risky tactic: ignore the hearings, allow judgment to be entered and then raise defenses to the underlying claim several months later after the judgment creditor executes the money judgment against your bank account. Based on the facts of deliberate ignorance adduced today, we reject this tactic. We deny the Defendant's Motion to set aside in the accompanying Order.

## I. Background

Multi-Temp Mechanical signed a Collective Bargaining Agreement (Agreement) with Local Union No. 19 of the International Association of Sheet Metal, Air, Rail and Transportation Workers.[1] The Agreement "establishes the wages, hours, and terms and conditions of employment for certain of Multi-Temp's employees."[2] It defines grievance procedures governing disputes and incorporates an addendum with formal Rules, Regulations, and Procedures.[3] The Rules describe a Joint Adjustment Board (Board) composed of no more than four and no less than two members from each party, with equal voting power no matter the composition, to "render final and binding determination on issues in question or dispute, arising out of application or interpretation of the terms and conditions of said agreement."[4]

### *Union's April 11, 2018 Grievance leads to Grievance arbitration hearing.*

On April 11, 2018, the Union filed a Grievance charging Multi-Temp with violating the Agreement by "failing to report the performance of bargaining unit work at a marijuana dispensary construction project, utilizing non-sheet metal workers to perform bargaining unit work, and making unreported cash payments to Union members for performing bargaining unit work."[5] William Reardon, the Board's Recording Secretary, notified Multi-Temp of the Grievance in an April 12, 2018 letter to Laura Cuneo, the President and owner of Multi-Temp.[6] Mr. Reardon attached a copy of the Grievance and the Board Rules.[7] The Board scheduled the Grievance hearing at the Union's office on April 25, 2018. Mr. Reardon told Multi-Temp of this hearing in an April 18, 2018 letter.[8]

On April 18, 2018, Multi-Temp's Ms. Cuneo responded to Mr. Reardon's April 12, 2018 letter explaining Multi-Temp did not sign an agreement with the Union but only a Residential Light Commercial Agreement.[9] Multi-Temp's Ms. Cuneo requested a copy of the Agreement

2

from Mr. Reardon. Shortly thereafter, Mr. Reardon responded urging Ms. Cuneo to offer her information at the April 25, 2018 Grievance hearing and request proof of Multi-Temp's signatory status at the hearing's outset.[10] Mr. Reardon wrote "[i]t is not possible to be signed to the Residential/Light Commercial Agreement without being bound to the [Agreement]. Similarly, the Residential/Light Commercial Agreement is only available to contractors who are signatory to the [] Agreement."[11] Multi-Temp's Ms. Cuneo emailed back within fifteen minutes and again requested a copy of the Agreement. Mr. Reardon responded he did not have the document, repeating his earlier advice and mentioning she could contact the Union to request the signed documents.[12] Mr. Reardon also referred to the Union's 2016 grievance against Multi-Temp which settled before a hearing where Multi-Temp did not contest signatory status.[13] Ms. Cuneo did not respond to Mr. Reardon's email other than adding Luke Gordon to the existing thread and requesting the signed copy of the Agreement so her attorney could review the provisions Multi-Temp allegedly violated.[14] Mr. Gordon apparently provided the signature page the following day, April 19, 2018.[15]

At Ms. Cuneo's request, the Board postponed the April 25, 2018 Grievance hearing until May 15, 2018.[16] Mr. Reardon notified Ms. Cuneo of the rescheduled hearing by email on April 23, 2018 to her and Mr. Gordon[17] and by certified mail on May 2, 2018 to her at Multi-Temp's place of business.[18] Ms. Cuneo responded to Mr. Reardon's April 23, 2018 email on the same day again requesting from Mr. Gordon a copy of the Agreement so her attorney could review it, after which her attorney would contact the parties with a date they would be available to meet.[19] Mr. Reardon answered within an hour calling to attention Ms. Cuneo's concern for her attorney's availability: "[t]he Joint Adjustment Board will not recognize your legal counsel at the hearing...Counsel may advise YOU, they are not free to address the Board, answer on your behalf,

3

or question others during the hearing. The Joint Adjustment Board will not schedule around your counsel's availability."[20] Mr. Reardon expressed serious doubt the hearing would be rescheduled for a second time and suggested Ms. Cuneo be prepared to present her defense on May 15, 2018.[21]

The Board's Rules enclosed in Mr. Reardon's April 12, 2018 letter to Ms. Cuneo, acknowledged as received,[22] specifically prohibit attorney involvement at grievance hearings:

> **Section 4:** The Board shall conduct grievance hearings in a manner and form which will insure that the following procedures are complied with:
>
> ...
>
> 13. Either party may elect to be represented by another party member of their respective bargaining unit and may seek the advice of legal counsel, however, in no case, shall legal counsel represent the party to the Joint Adjustment Board; Counsel may serve as a legal advisor but not as a representative.[23]

Apparently ignoring this prohibition, Ms. Cuneo replied on May 7, 2018 echoing her earlier requests for a copy of the Agreement because without it her attorney could not "review nor schedule a date to be at the hearing."[24] Ms. Cuneo did not address Mr. Reardon's email from two weeks earlier advising legal counsel would not be recognized. She explained at length her position as to the Grievance despite Mr. Reardon previously informing her defenses or claims must be brought to the Board's attention at the May 15, 2018 Grievance hearing.[25]

Mr. Reardon sent the Agreement to Ms. Cuneo on May 11, 2018 and reminded her the rescheduled Grievance hearing remained scheduled for May 15, 2018.[26] Ms. Cuneo responded on the same day asserting her attorney did not have "enough time to review nor schedule to be at this hearing" and, rather, her attorney would be "reaching out to all parties with a date and time that will work for all."[27] She thought she could unilaterally reschedule Grievance hearings. She erred.

On the afternoon of May 14, 2018, Mr. Reardon emailed Ms. Cuneo to remind her of the Grievance hearing the following morning at 8:00 A.M., stating the hearing would proceed regardless of her presence.[28] "As the Joint Adjustment Board does not recognize Counsel in the

4

process the Board will not re-schedule the hearing to accommodate your Attorney."[29] In her response sent May 15, 2018 at 7:11 A.M. to Mr. Reardon, Mr. Gordon, and three other unidentified parties, Multi-Temp's Ms. Cuneo advised she could not attend the May 15 Grievance hearing "with only 15 hours' notice,"[30] once more explaining she had to obtain legal counsel and asserting "[e]very email states I will not be attending this meeting on today's date yet No one mentioned that this matter cannot be rescheduled once."[31] Ms. Cuneo again provided defenses to the Grievance, among other information in the email.[32] She ignored the notice provided to her weeks earlier.

The Board Rules sent to Multi-Temp's Ms. Cuneo on April 12, 2018 described attendance and possible rescheduling:

> **Section 5:** In the event either party fails to appear for a schedule hearing, the Board may postpone hearing the case at its discretion, but only for a period of not more than two (2) weeks unless a valid and acceptable reason is given for further delay. The Board may, however, hear a case in the absence of either party.[33]

Consistent with the Rules, the Board declined to postpone the May 15, 2018 Grievance hearing a second time. It conducted the Grievance hearing. Multi-Temp declined to show up.[34] Based on testimony of the Union's three witnesses, the Board unanimously found Multi-Temp "failed to appropriately pay for 3800 hours of wages and benefits, resulting in damages of $326,534."[35] Multi-Temp received a copy by certified mail of the Board's May 15, 2018 decision on May 22, 2018. Multi-Temp did not ask for relief under the Agreement; it did not ask to vacate, set aside, or modify the Board decision.

### *Union sues to enforce the Board's award.*

Over six weeks later, the Union sued Multi-Temp for not complying with the Board's award.[36] Because Multi-Temp's refusal to comply violated the Agreement, the Union requested

5

we enforce the Board's May 15, 2018 decision and direct Multi-Temp to pay the $326,534.00 award.[37]

Multi-Temp decided to not answer the Complaint or otherwise defend itself within twenty days of being served.[38]

### *Union moves for default judgment.*

The Union moved for default judgment on August 14, 2018.[39] We ordered a hearing for September 7, 2018 to determine a precise amount of damages and address defenses.[40] As a condition to the hearing, we required the Union serve Multi-Temp with a copy of the Order, complaint, and motion for specific damages on August 16, 2018.[41] On the same day, counsel for Multi-Temp, Heather Herrington, contacted counsel for the Union, Martin Milz to discuss the matter.[42] After their telephone conversation, Attorney Herrington emailed Attorney Milz reiterating her request for the Union to lift the default judgment since Multi-Temp intended to answer the complaint that day—otherwise Multi-Temp would move to vacate the judgment.[43] Attorney Milz quickly answered and told Attorney Herrington to file the motion.[44]

Multi-Temp did not move to vacate the default judgment or take any action with our Court despite Attorney Herrington's threat. Multi-Temp ignored substantial correspondence between the two attorneys on August 16th and 17th concerning factual and legal issues which concluded with Attorney Herrington writing "[g]uess we'll work it out in Court."[45]

On the day before the September 7, 2018 damages hearing, Attorney Herrington began a second email thread with Attorney Milz regarding a Union post on its social media Facebook page which allegedly made false claims about Multi-Temp.[46] According to Attorney Herrington, the Union posted the New Jersey Division of Taxation and Office of Criminal Investigation for Taxes notified them of an investigation into Multi-Temp's business.[47] Upon contacting the New Jersey

6

Treasury Department, an agent allegedly informed Attorney Herrington no investigation had been opened and the Union would not have been notified anyway.[48] In claiming the malicious post on Facebook "has received 86 reactions, been shared 21 times and has 8 comments," Attorney Herrington claimed damages caused to Multi-Temp would be difficult to measure but "withdrawing the judgment will be a step in the right direction."[49] Attorney Herrington also asked for the Union to remove the post and issue an apology to Multi-Temp on Facebook.[50] Attorney Milz did not respond to the email as he anticipated discussion of the issue at the damages hearing the next day.[51]

After threatening to "work it out in court" and without explanation, Multi-Temp did not attend the September 7, 2018 hearing, raise defenses or contact the Court. On September 7, 2018, upon considering Multi-Temp's failure to attend our noticed hearing, or the Grievance hearing, or to move to open the arbitration award or to answer the Complaint, we granted the Union's motion for default and entered judgment in favor of the Union and against Multi-Temp for $326,534.00 plus post-judgment interest until collection.[52]

Notwithstanding Multi-Temp's absence at the September 7, 2018 hearing and our judgment against it, Attorney Herrington emailed Attorney Milz the same day stating she saw the Facebook post had been removed and requesting a status of the withdrawal of judgment and apology post.[53] In his September 10, 2018 response, Attorney Milz communicated his confusion as to Attorney Herrington's concern for the Facebook post given the nature of the Court proceedings.[54] Attorney Herrington did not respond to Attorney Milz's email. She just ignored our hearing.

*We denied Multi-Temp's December 7, 2018 request to open the default judgment.*

Several months passed. On November 26, 2018, the Union sought and obtained a writ of execution on Union accounts held at TD Bank.[55] The Union served a writ of execution on TD Bank as garnishee for the September 7, 2018 Judgment on December 6, 2018.[56]

With real money now at issue, Multi-Temp finally acted. It filed a "memorandum" on December 7, 2018 to open default judgment and lift the TD Bank garnishment order—its first filing since the Union filed this case five months earlier.[57] Despite Multi-Temp's failure to properly move for relief under Fed. R. Civ. P. 7, we ordered the non-compliant memorandum be treated as a motion and allowed the Union an extension to respond.[58]

In its non-compliant Memorandum, Multi-Temp sought to lift the default judgment under Rule 60(b), arguing lifting the TD Bank garnishment would not prejudice the Union but allowing it to stand would make it impossible for Multi-Temp to continue operating its business.[59] It argued meritorious defenses to the arbitration based on an "attached" proposed answer which Multi-Temp did not attach.[60] Each of its affirmative defenses challenged the arbitration findings; in other words, Multi-Temp wanted to avoid the agreed arbitration process and litigate its liability anew in this Court. For example, Multi-Temp argued emails between Multi-Temp's President Cuneo and the Board's Mr. Reardon confirmed Multi-Temp had not been involved in the sheet metal work at the job site in question and the Board did not permit Multi-Temp the opportunity to adequately prepare for the hearing in violation of due process.[61] Multi-Temp argued its signatory status with the Agreement had ended and it could not be a party to the underlying proceeding.[62] Multi-Temp claimed it requested the Board to postpone the hearing a second time days in advance, not just thirty minutes before its scheduled start as alleged in the complaint.[63] Multi-Temp argues the Union failed to provide the Agreement to allow it to prepare a defense and when Multi-Temp did

8

eventually receive the Agreement from Mr. Reardon on Friday, May 11, 2018, it did not have sufficient time to prepare for the hearing four days later.[64] Multi-Temp also argued counsel for the Union misrepresented the law when he cited an appellate decision in communications with Multi-Temp's counsel.[65] Multi-Temp argued the Union spread false and defamatory information about Multi-Temp in the September 1, 2018 post on social media contending government entities had been investigating Multi-Temp on tax related criminal charges.[66] Multi-Temp reasoned it had not presented the social media post to the Court earlier because it only discovered the information on September 6, 2018.[67] As a final meritorious defense, Multi-Temp claimed the Union failed to effect service of the complaint by serving on "an individual who was not authorized to accept service on behalf of [Multi-Temp] and who had no knowledge of the legal import of the documents."[68]

Multi-Temp also argued we should excuse its default because Attorney Herrington "believed that [the Union] would not pursue the default judgment as a result of the communication to [Attorney Milz] making him aware of his client's egregiously malicious and detrimental conduct in seeking to destroy Multi Temp's business with a false Facebook post," the post caused Multi-Temp irreparable harm and the Union had been "aware from the outset of communication that [Multi-Temp's] position was that service had not been appropriately effectuated."[69] Multi-Temp argued the only sanction appropriate as a remedy for the post on social media would be lifting the garnishment order and opening the default judgment.[70]

We denied Multi-Temp's "motion" on January 3, 2019 without prejudice to move with necessary detail of its meritorious defenses and possibly providing security for the outstanding judgment.[71]

9

Multi-Temp still did not timely move for relief. Hearing nothing from Multi-Temp, the Union filed a praecipe to enter judgment against garnishee TD Bank on January 22, 2019.[72] Multi-Temp finally objected the following day based on its alleged preparing of defenses.[73] Approximately three weeks elapsed since we granted Multi-Temp leave to plead sworn facts through a fact-based motion to vacate. Multi-Temp still failed to do so. We overruled Multi-Temp's objections to the Union's praecipe.[74] On January 28, 2019, we granted the Union's request to enter judgment against TD Bank and in favor of the Union for $326,534.00, consistent with a writ of garnishment served upon TD Bank.[75]

Finally, on February 6, 2019, Multi-Temp again moved to open the default judgment and lift the TD Bank garnishment order.[76] Aside from a few additional sentences attacking the credibility of one witness from the May 15, 2018 hearing which the Board relied on in making its award and claiming the Union did not serve Multi-Temp with the initial entry of judgment, Multi-Temp asserted the same arguments.[77]

## II. Analysis

Multi-Temp moves to vacate the September 7, 2018 default judgment based largely on challenges to fact findings in the May 15, 2018 arbitration award and then, presumably realizing it must focus on a challenge to the nature of the arbitration process, also argues the contractual arbitration deprived it of due process. We disagree.

We prefer to decide cases on the merits. Our Court of Appeals "does not favor defaults" and "in a close case, doubts should be resolved in favor of setting aside the default and obtaining a decision on the merits."[78] This is not a close case. We offered Multi-Temp several chances to timely defend itself. For unknown reasons, Multi-Temp did not act.

We "may set aside an entry of default for good cause," and we "may set aside a final default judgment under Rule 60(b)."[79] Rule 60(b) allows for relief from a final judgment, order, or proceeding: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief."[80]

To determine if a default judgment should be vacated, we must consider: whether the plaintiff will be prejudiced, whether the defendant has a meritorious defense, whether the default was the result of the defendant's culpable conduct, and the effectiveness of alternative sanctions.[81]

### A. Multi-Temp fails to specifically show a meritorious defense.

The meritorious defense factor is the "threshold issue in opening a default judgment."[82] A meritorious defense is shown if the allegations of defendant's answer, if established at trial, would constitute a complete defense to the action.[83] A defendant may not merely allege a defense but must "set forth with some specificity the grounds for his defense."[84]

We denied Multi-Temp's first motion to open default judgment because it failed to offer specificity on a meritorious defense as to why we should not confirm the arbitration award but allowed Multi-Temp leave to satisfy the heightened standard.[85] Appearing to feel no sense of urgency, Multi-Temp moved to open default judgment three weeks later, asserting almost identical arguments.[86]

11

Most, if not all, of Multi-Temp's proffered meritorious defenses challenge the adjourned May 15, 2018 Board hearing where it failed to appear after weeks of notice. Multi-Temp must today satisfy the standard for vacating an arbitration award because vacating default judgment confirming the Board's award effectively asks us to reconsider and vacate the merits of the Board's award.[87] Our Court of Appeals directs we must uphold an arbitration award drawing its essence from the collective bargaining agreement.[88] "So long as the arbitration award has some support in the record, and the arbitrator has not manifestly disregarded the law, we will affirm the award."[89]

In *Sylvester Thompson*, the court applied both the standard for vacating a default judgment and the standard for vacating an arbitration award in considering the defendants' motion to vacate default judgment after it failed to comply with an arbitration award, failed to answer in an action to enforce the award and failed to respond to a motion to enter default judgment.[90] The defendants alleged a meritorious defense claiming the damages assessed by the arbitrator had been based on fraudulent hearsay testimony.[91] The court found the defendants did not state grounds for vacating either the arbitration award or confirmation of it by default judgment because the arbitrator considered testimony from both parties at the hearing and chose to believe the plaintiff's witness. The arbitrator had some support in the record for his award and the defendants did not claim the arbitrator manifestly disregarded the law.[92] The defendants also argued the fraudulent testimony denied them "full and fair presentation of their case," and they possessed records to support their claim.[93] The court found this argument to be meritless since the defendants did not offer the relied upon documents at the arbitration which would have raised the issue then, but waited until two months after the award to do so.[94] "If defendants had wanted to object that the arbitration award was based on false testimony, they should have filed a motion to vacate, modify or correct the award as soon as it was issued or as soon as the defendants learned of the circumstances."[95]

12

Multi-Temp does not claim the Board's award lacks support in the record, nor does it claim the Board manifestly disregarded the law. A mere glance at the May 15, 2018 Hearing Minutes and decision confirms the Board based the award on substantial testimony and after deliberation. In claiming a meritorious defense, Multi-Temp raises a litany of factual and procedural allegations, most of which concern the underlying proceeding and not the instant effort to vacate the arbitration award.

We first address Multi-Temp's claim it is not a signatory to the Agreement because, if true, we must vacate both the default judgment and arbitration award.[96] Multi-Temp alleges it had not been a signatory to the Agreement at the time of the Grievance. Said differently, Multi-Temp concedes it had once been a signatory to the Agreement but claims it terminated its status before the Union's Grievance. This theory raises an issue invoking the termination clause of the Agreement which is an attack on the Agreement as a whole and an issue for the Board's consideration, not ours.[97] The Board determined Multi-Temp still enjoyed signatory status through the employer representative, the Sheet Metal Contractors Association, and Multi-Temp did not rescind the bargaining authorization under the Agreement.[98] We will not vacate this considered decision.

Multi-Temp also raises meritorious defenses challenging the Grievance hearing: emails exchanged with Mr. Reardon disputing the Grievance prove it had not been involved in the work at the job site in question; the main witness at the May 15, 2018 hearing lacked credibility; its request for a second postponement of the hearing had been made days in advance and not just thirty minutes before; and, the Union failed to provide the Agreement to allow it time to adequately prepare for the hearing and receiving it four days before the hearing did not leave sufficient time to prepare. Multi-Temp did not raise these issues or produce documents at the Grievance hearing

13

to support its position, because Multi-Temp did not attend the hearing. Had Multi-Temp attended, it could have contested the credibility of witness testimony and the Board might have reached a different conclusion. The Board, composed of equal voting power from both the Union side and the employer side, made a unanimous decision to find against Multi-Temp based on the record put before it. As in *Sylvester Thompson*, we cannot permit Multi-Temp to claim meritorious defenses based on issues it failed to raise at the hearing and failed to raise in a motion to vacate within thirty days of receiving a copy of the award as Pennsylvania law requires.[99] Multi-Temp received the Board's decision, did not act on it and is now attempting to do so several months later and only because judgment has been entered against it. The allegations do not state a meritorious defense. The Union garnished its bank account.

As to its meritorious defenses deriving from the events and enforcement actions following the May 15, 2018 Grievance hearing, Multi-Temp broadly alleges counsel for the Union misrepresented caselaw in email communications to counsel for Multi-Temp. We cannot find, and Multi-Temp fails to assert, how this claim is a meritorious defense. Multi-Temp argues at length it has a meritorious defense because of the Union's allegedly false and defamatory post on social media caused harm to Multi-Temp's business. Multi-Temp knew the Facebook post occurred at some point in September 2018, several months after the May 15, 2018 hearing and approximately two months after the Union sued to enforce the Board's award. The Facebook post is irrelevant to the Board's May 15, 2018 award and the basis for today's action.

Even if we accepted Multi-Temp's theory the Union sought to harm Multi-Temp's business, the Union is not the sole authority in Grievance proceedings under the Agreement. Rather, the Board is composed of an equal number of voting members from the Union and the employer side—and it unanimously found Multi-Temp violated the Agreement. Multi-Temp's

claim it had not brought the September 2018 post to the attention of the Court earlier because it only discovered the information on September 6, 2018 is meritless since Multi-Temp chose to wait until December 7, 2018 to first appear in Court. The post on the Union's social media page in no way constitutes a meritorious defense to this action to enforce the Board's May 15, 2018 award.

To the extent Multi-Temp intended to argue the violation of due process constitutes a meritorious defense, we similarly find a lack of sufficient facts to establish a meritorious defense. The essential requirements of a due process claim are notice and the opportunity to be heard.[100] "The notice and hearing must be at a meaningful time and in a meaningful manner that is appropriate to the nature of the case."[101] Multi-Temp alleges the Union violated its due process rights first in failing to provide sufficient information to allow Multi-Temp to defend itself at arbitration, a claim previously asserted. As reflected in the email communications between Multi-Temp's President Cuneo and the Board's Reardon, Multi-Temp became aware of the Grievance hearing no later than April 18, 2018. At Ms. Cuneo's request, the Board postponed the hearing from April 25 to May 15, ultimately allowing Multi-Temp approximately one month to prepare. Mr. Reardon provided a copy of the Grievance and sent multiple emails to Ms. Cuneo reminding her of the approaching May 15, 2018 hearing date. Ms. Cuneo made multiple requests for the Agreement and obtained it four days before the hearing. With or without the Agreement, Ms. Cuneo evidently knew Multi-Temp's defenses before the May 15, 2018 hearing as she asserted them in multiple emails to Mr. Reardon and others—the same defenses she now alleges. Multi-Temp had more than an ample adequate opportunity to be heard regarding the Grievance at the May 15, 2018 hearing but chose not to attend; it then chose not to take action for months.

Multi-Temp also claimed due process violations based on Mr. Reardon falsely representing Multi-Temp could not have counsel at arbitration and raising bias in an individual presiding at the

15

Grievance hearing. Multi-Temp wrongly relies on Local Adjustment Board Guidelines taken from the National Joint Adjustment Board website and disregarded the Agreement and its incorporated Rules. Multi-Temp attempted to rely on the guidelines because they provide a legal right to representation by counsel at hearings. But the Agreement and Rules are the governing documents. As Ms. Cuneo knew weeks earlier, the Rules prohibit legal counsel from being recognized at Grievance hearings but parties are permitted to seek advice from counsel. Mr. Reardon correctly informed Multi-Temp it could not be represented by its attorney, in conformance with the law.[102]

Finally, Multi-Temp's assertion of bias by an individual presiding at the Grievance hearing, and he should have been removed because he had a history of issues with Multi-Temp, fails to establish a violation of due process. First, this individual had not been involved with the job or Grievance. Multi-Temp alleged bias based on past experiences and subjective beliefs. Multi-Temp could have brought this concern to the Board's attention and requested his removal, but it failed to attend the May 15, 2018 Grievance hearing. The defense also fails because Multi-Temp could have moved to vacate the award. It decided not to. Multi-Temp chose not to enjoy its due process rights.

Multi-Temp fails offer a meritorious defense as to why we should not confirm the arbitration award sought by the Union.

### B. Multi-Temp's culpable conduct caused the default judgment.

Reckless disregard for repeated communications is culpable conduct allowing us to deny a motion to open the default.[103] Determining whether neglect is excusable is an equitable analysis which considers all relevant circumstances surrounding the party's omission.[104]

In *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club*, our Court of Appeals found the defendant's conduct constituted reckless disregard because each time it received

communications regarding the pending lawsuit, the party merely gave the paperwork to its insurance broker and took no further action.[105] The defendant failed to answer, appear, or plead in response to the complaint, the motion for default, the entry of default, the motion for default judgment.[106] The defendant did not contact either the court or opposing party during the course of the proceeding.[107] Our Court of Appeals found, "[t]his is the kind of reckless disregard for repeated communications regarding a suit that establishes a defendant's culpability."[108]

Multi-Temp did not appear here until December 7, 2018, five months after the Union filed suit and seven months after the Board's award. Multi-Temp's request to open default judgment likely resulted from the writ of execution served on TD Bank days before. As made clear by affidavits of service and in several parts of both parties' memoranda, Multi-Temp had been aware of this action well before filing its memorandum on December 7, 2018. Like the defendant in *Starlight Ballroom Dance Club*, Multi-Temp received communications and court documents regarding the lawsuit but took no action—until TD Bank withdrew funds from Multi-Temp's account. Multi-Temp failed to answer, appear, or plead in response to the complaint, the request for default, the entry of default, motion for default judgment, hearing on precise damages, or even the order granting default judgment.

In considering all relevant circumstances surrounding Multi-Temp's omission, Multi-Temp exhibited the same tendency to avoid liability during the arbitration proceeding and in failing to exercise post-decision rights under the Agreement. Multi-Temp recklessly disregarded repeated communications. Its culpability strongly weighs against opening the default judgment.

## C. The Union is prejudiced by not collecting its default judgment and an alternative sanction is not available.

Prejudice to the Union and the effectiveness of alternative sanctions are addressed together because the two most important factors previously discussed weigh heavily in favor of denying Multi-Temp's motion to open default judgment.[109]

Although "dismissal must be a sanction of last, not first, resort,"[110] we have repeatedly been lenient on Multi-Temp considering the effect default judgment has on its business. In response to its first request to open default judgment, we allowed Multi-Temp a second opportunity to properly move for relief instead of summarily dismissing its request. We extended deadlines for Multi-Temp and amended Orders to accommodate it. Multi-Temp had more than its fair chance to defend itself.

Prejudice to the Union may be modest in comparison to Multi-Temp, but the analysis requires our consideration of prejudice to the non-defaulting Union, not Multi-Temp. "In this regard, the absence of prejudice does not entitle the obstreperous litigant to evade the consequences of its dilatory conduct."[111] To allow this action to proceed would unnecessarily force the Union to expend more time and money. Finally, we must recognize federal policy favoring arbitration and refrain from creating precedent where employers intentionally abstain from contractual arbitration proceedings with the belief there will be no consequences.

## III. Conclusion

We dismiss Multi-Temp's motion to open default judgment under Fed. R. Civ. P. 60(b) and lift the garnishment order. The Union may proceed with its judgment under the accompanying Order.

[1] *See* ECF Doc. No. 1 at 10. Multi-Temp claims, without a basis, of terminating the Agreement or not otherwise being a party to the Agreement. It failed to raise this issue with the Board and the Union demonstrates the fallacy of this claim.

[2] *Id.* at ¶ 7.

[3] ECF Doc. No. 1 at 35. *See* ECF Doc. No. 34-1 at 24.

[4] ECF Doc. No. 34 at 26-27.

[5] ECF Doc. No. 1 at ¶ 11; *see* ECF Doc. No. 1 at 39.

[6] ECF Doc. No. 34-1 at 22.

[7] *See id.* at 23-35.

[8] ECF Doc. No. 1 at ¶ 12; *see* ECF Doc. No. 1 at 41.

[9] ECF Doc. No. 27-1 at 10.

[10] *Id.* at 9.

[11] *Id.*

[12] *Id.* at 8.

[13] *Id.*

[14] *Id.* at 7.

[15] *Id.*

[16] ECF Doc. No. 1 at 13.

[17] ECF Doc. No. 27-1 at 6.

[18] ECF Doc. No. 1 at 44.

[19] ECF Doc. No. 27-1 at 5.

[20] ECF Doc. No. 34-1 at 37.

[21] *Id.*

[22] *See* ECF Doc. No. 27-1 at 10 ("This email is in response to your letter dated April 12, 2018.").

[23] ECF Doc. No. 34-1 at 31.

[24] ECF Doc. No. 27-1 at 4.

[25] *Id.*

[26] *Id.* at 3.

[27] *Id.*

[28] *Id.* at 2.

[29] *Id.*

[30] Ms. Cuneo knew of the May 15, 2018 hearing since April 23, 2018.

[31] *Id.* at 1.

[32] *Id.*

[33] ECF Doc. No. 34-1 at 31.

[34] ECF Doc. No. 1 at ¶ 16.

[35] *Id.* at ¶ 18; *see* ECF Doc. No. 1 at 53-55.

[36] *See* ECF Doc. No. 1.

[37] *Id.*

[38] ECF Doc. No. 4; *see also* ECF Doc No. 3.

[39] ECF Doc. No. 4.

[40] ECF Doc. No. 5.

[41] *See id;* ECF Doc. No. 6.

[42] ECF Doc. No. 15 at ¶ 8.

[43] *See* ECF Doc. No. 15 (Exhibit A-11).

[44] *Id.*

[45] *Id.*

[46] *See* ECF Doc. No. 15 (Exhibit A-14).

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] ECF Doc. No. 15 at ¶ 13.

[52] ECF Doc. No. 7.

[53] ECF Doc. No. 15 (Exhibit A-13).

[54] ECF Doc. No. 15 (Exhibit A-14).

[55] ECF Doc. Nos. 9, 10.

[56] ECF Doc. No. 15, ¶ 20.

[57] ECF Doc. No. 12; *see also* ECF Doc. No. 9; ECF Doc. No. 10.

[58] ECF Doc. No. 13. Rule 7 provides in part "[t]he motion must: be in writing unless made during a hearing or trial; state with particularity the grounds for seeking the order; and state the relief sought." Fed. R. Civ. P. 7(b).

[59] ECF Doc. No. 12 at 5.

[60] *Id.* at 5-8.

[61] *Id.* at 5-6.

[62] *Id.* at 6.

[63] *Id.; See* ECF Doc. No. 1 at ¶ 14.

[64] *Id.*

[65] *Id.*

[66] *Id.* at 5, 7.

[67] *Id.* at 7.

[68] *Id.* at 7-8.

[69] *Id.* at 8.

[70] *Id.* at 8-9.

[71] *Id.*

[72] ECF Doc. No. 17.

[73] ECF Doc. No. 18.

[74] ECF Doc. No. 19.

[75] ECF Doc. No. 21.

[76] ECF Doc. No. 22.

[77] On February 6, 2019, just hours after moving to open the default judgment again, Multi-Temp requested "emergency" relief to stop payment on the garnishment because counsel for Multi-Temp mistakenly thought we had not entered final judgment. ECF Doc. No. 23 at 4. Following a telephone call with counsel, we directed the Union to defer depositing the judgment check until February 15, 2019 and only if Multi-Temp has not posted a $335,000 bond. ECF Doc. No. 26. We allowed Multi-Temp to file a supplemental memorandum in support of its second motion to open the default judgment and granted the Union leave to respond to Multi-Temp's motion. *Id.* Multi-Temp submitted its supplemental memorandum the following day, taking a vastly different position and claiming the Union violated its constitutional right to due process under the 14th Amendment. ECF Doc. No. 27. Multi-Temp first alleges the Union violated its due process rights by failing to provide sufficient information for Multi-Temp to defend itself at the May 15, 2018 hearing since Mr. Reardon did not provide the Agreement until May 11, 2018. *Id.* Multi-Temp disregarded the Agreement and its accompanying Rules to introduce and rely on Local Adjustment Board Guidelines found on the National Joint Adjustment Board website in setting forth its remaining due process claims: Mr. Reardon falsely informed Ms. Cuneo she could not have legal counsel represent her at the hearing and the Board permitted a biased individual to preside. *See* ECF Doc. No. 27; ECF Doc. No. 35. The guidelines from the national website do not apply because here the Agreement is not a Standard Form of Union Agreement and the arbitration procedure does not otherwise incorporate them. ECF Doc. No. 34-1 at 3.

Multi-Temp did not obtain the bond as ordered. Instead, on February 13, 2019, Multi-Temp sought an emergency order to have TD Bank hold the funds in lieu of a bond or to extend the deadline to obtain the bond. ECF Doc. No. 28. Multi-Temp offered no reason as to why it failed to comply with our Order. Since changing the deadline caused no prejudice to the Union, we permitted Multi-Temp until 12:00 P.M. on February 19, 2019 to obtain the bond. ECF Doc. No. 29. On February 19, 2019, Multi-Temp again requested emergency relief, this time alleging the bond company's process would not be completed in time to meet the deadline. ECF Doc. No. 30. Following a telephone conference regarding Multi-Temp's second emergency motion (ECF Doc. No. 31), and

Multi-Temp counsel representing her client did not feel comfortable with the funds being held by the Union, though it failed to obtain a bond when granted leave twice to do so, we directed the Union counsel to deposit the judgment check into his firm's trust account. ECF Doc. No. 33. On February 21, 2019, the Union responded to Multi-Temp's motion to open default judgment and lift garnishment order. ECF Doc. No. 34. Multi-Temp replied to the Union's opposition less than a week later. ECF Doc. No. 35.

[78] *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982).

[79] Fed. R. Civ. P. 55(c).

[80] Fed. R. Civ. P. 60(b).

[81] *See Mathias v. Superintendent Frackville Sci,* 876 F.3d 462, 473 (3d Cir. 2017) (citing *Emcasco Ins. Co. v. Sambrick,* 834 F.2d 71, 73 (3d Cir. 1987)).

[82] *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club,* Inc., 175 Fed. Appx. 519, 522 (3d Cir. 2006) (quoting *Hritz v. Woma Corp.,* 732 F.2d 1178, 1183 (3d Cir. 1984)) (quotation marks and alterations omitted); *see United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 195 (3d Cir. 1984).

[83] *Interior Finish Contrs. Ass'n v. Drywall Finishers Local Union No. 1955,* 625 F. Supp. 1233, 1239 (E.D. Pa. 1985) (quoting *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242, 244 (3d Cir. 1951)) (quotation marks omitted).

[84] *Nationwide Mut. Ins. Co.*, 175 Fed. Appx. at 522 (quoting *Hritz*, 732 F.2d at 1183) (quotation marks and alterations omitted).

[85] ECF Doc. No. 16.

[86] ECF Doc. No. 22.

[87] *Metropolitan Dist. Council v. Sylvester Thompson, Inc.,* No. 92-2842, 1993 WL 137464, at *2 (E.D. Pa. Apr. 30, 1993).

[88] *Five Star Parking v. Union Local 723*, 246 Fed. Appx. 135, 139 (3d Cir. 2007) (quoting *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs,* 357 F.3d 272, 279 (3d Cir. 2004)) (quotation marks omitted).

[89] *Eichleay Corp. v. Int'l Ass'n of Bridge,* 944 F.2d 1047, 1056 (3d Cir. 1991) (citing *Tanoma Mining Co. v. Local Union No. 1269, United Mine Workers of America,* 896 F.2d 745, 747 (3d Cir. 1990)).

[90] *Sylvester Thompson, Inc.,* 1993 WL 137464, at *2.

[91] *Id.*

[92] *Id.*

[93] *Id.*

[94] *Id.*

[95] *Id.* (citing *Service Employees International Union v. Office Center Services, Inc.,* 670 F.2d 404 (3d Cir. 1982)). *See* 42 Pa. Cons. Stat. Ann. § 7314; *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Neville Chem. Co.,* 298 F. App'x 209, 212 (3d Cir. 2008) (finding against the employer for failing to raise issues at hearing despite the information being available and because it failed to bring an action to modify, vacate, or correct the arbitration award within thirty days required under Pennsylvania law).

[96] *New Jersey Reg'l Council of Carpenters v. Heartland Dev. Co.,* No. 09-178, 2010 WL 1706961, *3 (D.N.J. Apr. 27, 2010) ("If a party is not a signatory to a collective bargaining agreement, then an arbitrator lacks the authority to issue an award against that party").

[97] *New Jersey Bldg. Laborers Statewide Benefits Fund v. Am. Coring & Supply,* 341 Fed. Appx. 816, 820 (3d Cir. 2009) ("challenges to arbitrability are reserved for the court, while arguments that attack the contract as a whole must be presented to an arbitrator").

[98] The Agreement provides: "The parties agree that the Employer will hereafter be a member of the Multi-Employer bargaining unit represented by said Association unless this authorization is withdrawn by written notice to the Association and the Union at least one hundred and fifty (150) days prior to the then current expiration date of this Agreement." ECF Doc. No. 1 at 36. Even if we could consider the issue, Multi-Temp failed to allege it provided this notice and did not otherwise submit documents supporting its defense.

[99] 42 Pa. Cons. Stat. Ann. § 7314.

[100] *Zappan v. Pa. Bd. of Prob. & Parole,* 152 F. App'x 211, 220 (3d Cir. 2005) (quotation marks omitted).

[101] *Knox v. Union Twp. Bd. of Educ.,* No. 13-5875, 2015 WL 769930, *9 (D.N.J. Feb. 23, 2015) (internal quotation marks and citations omitted).

[102] *See Allwein v. PPG Indus.,* No. 16-2049, 2017 WL 4310261 (E.D. Pa. Sept. 28, 2017) (denying request for court order to have attorney representation at arbitration); *IBEW, Local Union 269 v. Lighton Indus.,* No. 10-2473, 2010 WL 5069943, *12 (D.N.J. Dec. 6, 2010) ("while the Third Circuit has not had the occasion to decide this issue, other circuits have recognized that there is no right to counsel during an arbitration proceeding"); *N.J. Carpenters Funds v. CBC Carpet, Inc.,* No. 07-5511, 2008 WL 576990, *2 (D.N.J. Feb. 29, 2008) (holding party failed to demonstrate lack of counsel at arbitration provided basis for vacatur).

[103] *Nationwide Mut. Ins. Co.*, 175 Fed. Appx. at 522 (citation and alterations omitted). *See Kelly M. v. Luzerne Intermediate Unit,* 71 Fed. Appx. 116, 118 (3d Cir. 2003) (finding the defendant's "conduct in failing to respond to the several personal notices he received from plaintiffs' counsel or to appear at several hearings was culpable").

[104] *Manus Corp. v. NRG Energy, Inc.,* 188 F.3d 116, 125 (3d Cir. 1999) (citing *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 398-99 (1993)).

[105] 175 Fed. Appx. 519, 523 (3d Cir. 2006).

[106] *Id.*

[107] *Id.*

[108] *Id.*

[109] *See Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.,* No. 04-3393, 2004 WL 2609119 (E.D. Pa. Nov. 16, 2004), *aff'd,* 175 Fed. Appx. 519, 523 (3d Cir. 2006) ("because the other two factors weigh heavily in favor of denying Defendants' motion, the final judgment of this Court will not be disturbed").

[110] *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 869 (3d Cir. 1984).

[111] *Local Union No. 44, Sheet Metal Workers' Int'l Ass'n v. ACA Greenhouses, Inc.,* No. 00-1060, 2006 WL 759653, at *5 (M.D. Pa. Mar. 22, 2006).